**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PRISCILLA ALCANTAR, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DANUBENET, INC. d/b/a DRIVING SCHOOL SOLUTIONS, and AUTOMOBILE CLUB OF SOUTHERN CALIFORNIA,<br><br>Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Priscilla Alcantar ("Plaintiff"), brings this class action complaint against Defendants DanubeNet, Inc. d/b/a Driving School Solutions ("DSS") and the Automobile Club of Southern California ("ACSC") (together with DSS, "Defendants") individually and on behalf of all others similarly situated, by and through her attorneys, and makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself, which are based on personal knowledge.

**INTRODUCTION**

1. This is a class action arising from Defendants' failure to safeguard personally identifying information ("PII") for ACSC members. This sensitive information includes putative class members' full legal names, as well as their driver's permit or license number.

2. On December 22, 2025, Defendants became aware of and/or identified suspicious activity on DSS's computer network. Shortly thereafter, Defendants determined that an unauthorized third-party gained access to its network between July 10, 2025, through August 19,

2025. On January 16, 2026, ACSC determined that information relating to its members were potentially involved in this security incident.

3. The events in generally described herein are collectively referred to as the "Data Breach."

4. On March 9, 2026, ACSC reported the Data Breach to the California Secretary of State. The notice provides that the Data Breach concerns "unauthorized access to records in DSS' systems between July 10, 2025 and August 19, 2025." The notice also sets out that the compromised information includes: "record[s] containing your name and driver's permit/license number."[1]

5. Plaintiff received notice of the data breach in a letter dated March 9, 2026.

6. Defendants owed a duty to Plaintiff and Class members to maintain reasonable and adequate security measures to secure, protect, and safeguard the PII they collected and stored about them. Defendants breached said duty by failing to implement and maintain reasonable security procedures and practices to protect the PII from unauthorized access and unnecessarily using, storing, and retaining Plaintiff's and Class members' personal information on its inadequately protected network.

7. Defendants knew that additional security was required to protect Plaintiff's and Class members' personal information and that the information uploaded on its network was susceptible to security risks. Nonetheless, Defendants continued to use its inadequate network to store, maintain and transmit extremely sensitive PII.

8. Due to the Defendants' inadequate cybersecurity, Plaintiff's and Class members' PII was accessed and disclosed in the Data Breach.

---

[1]https://oag.ca.gov/system/files/ACSC_CA%20App%20%26%20Sample_0.pdf

9. Plaintiff brings this action on behalf of herself and all affected consumers whose PII was exposed as a result of the Data Breach. Plaintiff seeks, for herself and the Class, injunctive relief, actual and other economic damages, consequential damages, nominal damages or statutory damages, punitive damages, and attorney's fees, litigation expenses, and costs.

**PARTIES**

10. Plaintiff is a citizen of California residing in Agoura Hills, California. On March 9, 2026, Plaintiff received a letter notifying her that Defendants identified her as an affected member of the Data Breach.

11. Plaintiff anticipates spending a considerable amount of resources, including her time and money, on a continuing basis to mitigate and adequately address the harms caused by the Data Breach. Plaintiff also has a continuing interest in ensuring that her PII is protected and safeguarded from future breaches.

12. As a direct and proximate result of the Data Breach, Plaintiff suffered actual injury and damages, including, but not limited to, lost time and money, loss of privacy, emotional distress, imminent and pending injury related to identity theft, and diminution in the value of her PII.

13. Defendant DSS is a New Jersey corporation with its principal place of business located at 1200 Route 22 East, Suite 2000, Bridgewater, New Jersey 08807.

14. Defendant ACSC is a California non-profit corporation with its principal place of business located at 2601 S. Figueroa Street A451, Los Angeles, California 90007.

**JURISDICTION AND VENUE**

15. This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendants.

16. This Court has personal jurisdiction over Defendants because Defendant DSS resides in this District and a substantial part of the events giving rise to Plaintiff's claims took place within this judicial District.

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant DSS resides in this District and a substantial part of the events giving rise to Plaintiff's claims took place within this judicial District.

## FACTUAL BACKGROUND

### I. BACKGROUND ON DATA BREACHES

18. A data breach is an incident in which sensitive, protected, or confidential data has potentially been viewed, stolen, or used by an individual unauthorized to do so.[2]

19. Data breaches are becoming increasingly more common and harmful. In 2014, 783 data breaches were reported, with at least 85.61 million total records exposed.[3] In 2019, 3,800 data breaches were reported, with at least 4.1 billion total records exposed.[4] The average cost of a data breach in the United States in 2019 was $8.19 million.[5]

20. Consumers are harmed in a variety of ways by data breaches. First, consumers are harmed financially. According to the IBM and Ponemon Institute's 2019 "Cost of a Data Breach" report, the average cost of a data breach per consumer was $150 per record.[6] However,

---

[2] Julian De Groot, *The History of Data Breaches*, DIGITAL GUARDIAN (Oct. 24, 2019), https://digitalguardian.com/blog/history-data-breaches.

[3] Julian De Groot, *The History of Data Breaches*.

[4] Dan Rafter, *2019 Data Breaches: 4 Billion Records Breached So Far*, NORTON BY SYMANTEC, https://us.norton.com/internetsecurity-emerging-threats-2019-data-breaches.html.

[5] Chris Brook, *What's the Cost of a Data Breach in 2019*, DIGITAL GUARDIAN (July 30, 2019), *https*://digitalguardian.com/blog/whats-cost-data-breach-2019.

[6] *Id*.

other estimates have placed the costs even higher. The 2013 Norton Report estimated that the average cost per victim of identity theft—a common result of data breaches—was $298 dollars.[7] And in 2019, Javelin Strategy & Research compiled consumer complaints from the U.S. Federal Trade Commission ("FTC") and indicated that the median out-of-pocket cost to consumers for identity theft was $375.[8]

21. Identity theft is one of the most problematic harms resulting from a data breach. With access to an individual's PII, criminals can do more than just empty a victim's bank account – they can also commit all manner of fraud, including obtaining a driver's license or official identification card in the victim's name, but with the thief's picture. In addition, identity thieves may obtain a job, rent a house, or receive medical services in the victim's name. Identity thieves may even give the victim's personal information to police during an arrest, resulting in an arrest warrant being issued in the victim's name.[9]

22. Consumers are also harmed by the time they spend rectifying the effects of a data breach. A Presidential identity theft report from 2007 states that:

> In addition to out-of-pocket expenses that can reach thousands of dollars for the victims of new account identity theft, and the emotional toll identity theft can take, some victims have to spend what can be a considerable amount of time to repair the damage caused by the identity thieves. Victims of new account identity theft, for example, must correct fraudulent information in their credit reports and monitor their reports for future inaccuracies, close

[7] NORTON BY SYMANTEC, 2013 NORTON REPORT 8 (2013), https://yle.fi/tvuutiset/uutiset/upics/liitetiedostot/norton_raportti.pdf.

[8] *Facts + Statistics: Identity Theft and Cybercrime*, INSURANCE INFORMATION INSTITUTE, https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (citing the Javelin report).

[9] *See Warning Signs of Identity Theft*, Federal Trade Commission, https://www.identitytheft.gov/Warning-Signs-of-Identity-Theft.

> existing bank accounts, open new ones, and dispute charges with individual creditors.[10]

23. Further, the effects of a data breach on consumers are not temporary. In a report issued by the U.S. Government Accountability Office ("GAO"), the GAO found that "stolen data may be held for up to a year or more before being used to commit identity theft," and "fraudulent use of [stolen information] may continue for years" after the stolen information is posted on the Internet.[11] In fact, consumers suffer 33% of the harm from a data breach after the first year.[12] Thus, consumers can lose years' worth of time dealing with a data breach.

24. The existence of these problems is not always immediately ascertainable. As the GAO Report describes:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen, data has been sold or posted on the web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

25. Consumers are also harmed by the lost value of their data. Personally Identifying Information ("PII") represent important, highly valuable property rights.[13] PII can be easily

---

[10] U.S. FEDERAL TRADE COMMISSION, THE PRESIDENT'S IDENTITY THEFT TASK FORCE, COMBATING IDENTITY THEFT: A STRATEGIC PLAN 11 (2007), https://www.ftc.gov/sites/default/files/documents/reports/combating-identity-theft-strategic-plan/strategicplan.pdf.

[11] *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688, 694 (7th Cir. 2015) (citing U.S. GOV'T ACCOUNTABILITY OFFICE, GAO–07–737, REPORT TO CONGRESSIONAL REQUESTERS: PERSONAL INFORMATION (2007)).

[12] Larry Ponemon, *What's New in the 2019 Cost of a Data Breach Report*, SECURITY INTELLIGENCE, https://securityintelligence.com/posts/whats-new-in-the-2019-cost-of-a-data-breach-report/.

[13] *See* John T. Soma, et al, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 RICH. J.L. & TECH. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

commodified, allowing the information to be bought and sold. This information "has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets."[14]

26. As a result, companies have begun providing an opportunity to consumers to sell this information to advertisers and other third parties. More and more, consumers have control over who ultimately receives their PII, and when consulted, consumers place a high value on their PII as well as on the privacy of that information. Researchers have even confirmed that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[15]

27. Thus, when consumers' PII is disclosed without their consent, consumers are deprived of both the ability to choose what is done with their information as well as the full monetary value of their information.

## II. DEFENDANTS COLLECTED AND FAILED TO SECURE CLASS MEMBERS' INFORMATION

28. Defendants collect and maintain a considerable amount of PII from their members and clients in their day-to-day operations.

29. Defendants should have taken reasonable steps, including following industry practices, to ensure the safety of Plaintiff and putative class members' valuable PII.

30. Despite their legal duties to do so, Defendants failed to operate a secure network, leaving high risk targets like Plaintiff's and the Class's PII exposed.

---

[14] Soma, *supra*, *Corporate Privacy Trend*.

[15] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior: An Experimental Study*, 22 INFORMATION SYSTEMS RESEARCH 254, 254 (2011), https://www.jstor.org/stable/23015560?seq=1#page_scan_tab_contents.

31. Despite foreseeable risks that their networks were susceptible to a data breach, Defendants failed to take sufficient steps or follow industry standards to protect their members and client's PII.

32. On December 22, 2026, Defendants became aware of and/or identified suspicious activity on DSS's computer network. Shortly thereafter, Defendants determined that an unauthorized third-party gained access to its network between July 10, 2025, through August 19, 2025. On January 16, 2026, ACSC determined that information relating to its members were involved in this security incident.

33. The unauthorized third party accessed the stolen information and is certain to use it for improper and nefarious purposes.

34. As such, Defendants were aware that PII was at high risk of theft. Accordingly, Defendants should have anticipated and taken appropriate and standard measures to protect Plaintiff's and Class member's PII against cyber-security attacks.

35. It was not until March 9, 2026—nearly two months later—that Defendants filed a notice with the State of California Department of Justice indicating a data breach of unsecured PII of its members.[16]

36. Defendants' notice of Data Breach failed to provide adequate remediation. Defendants have not offered Plaintiff, or any member of the putative class, any compensation or remediation for the PII exposed in connection with the Data Breach. Identity thieves place a high value on PII.

37. In turn, Plaintiff and Class members have been unable to adequately protect themselves against identity theft.

---

[16] *See* fn 1.

## CLASS ACTION ALLEGATIONS

38. Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23 and seeks to represent the following class of individuals defined as:

Nationwide Class: All persons whose personally identifiable information was compromised as a result of the Data Breach.

California Subclass: All persons in California whose personally identifiable information was compromised as a result of the Data Breach.

39. Members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Classes number in the thousands. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

40. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to: (a) Whether Defendants had a duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the PII they collected from Plaintiff and Class members; (b) Whether Defendant breached its duty to protect the PII of Plaintiff and each Class member; and (c) Whether Plaintiff and each Class member are entitled to statutory damages, actual damages and other equitable relief.

41. The claims of the named Plaintiff are typical of the claims of the Classes in that the named Plaintiff and the Class sustained damages resulting from the Data Breach due to Defendants' negligent handling of her PII.

42. Plaintiff is an adequate representative of the Class because her interests do not

conflict with the interests of the Class members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and her counsel.

43. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

**COUNT I**
**Negligence**

44. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

45. Plaintiff brings this claim individually and on behalf of the Classes against Defendants.

46. Defendants had and continue to have a duty to Plaintiff and members of the Class to safeguard and protect their PII. Defendants created this duty by requiring Plaintiff and members of the Class to provide their PII in order to receive services. Defendant collected and stored

Plaintiff and Class members PII for the purposes of providing their services.

47. Defendants' duty required them, among other things, to design and employ cybersecurity systems, anti-hacking technologies and intrusion detection and reporting systems sufficient to protect the PII from unauthorized access and to promptly alert Defendants to any such access and enable it to determine the extent of any compromised PII.

48. Had Defendants adequately designed, employed, and maintained appropriate technological and other systems, the PII would not have been compromised or, at a minimum, Defendants would have known of the unauthorized access sooner and would be able to accurately inform Plaintiff and the other members of the Class of the extent to which their PII has been compromised.

49. Defendants breached their duty of care by, among other things, failing to maintain appropriate technological and other systems to prevent unauthorized access, failing to minimize the PII that any intrusion could compromise, and failing to detect the Data Breach in a timely manner to avoid or minimize the effects of the Data Breach.

50. Defendants' breach of its duty provided the means for the unauthorized third party to access, obtain, and potentially misuse the PII of Plaintiff and the members of the Class without authorization. It was reasonably foreseeable that such breaches would expose the PII to criminals and other unauthorized users.

51. Defendants' breach of their duty has directly and proximately injured Plaintiff and members of the Class, including but not limited to: (i) an imminent, immediate and continuing increased risk of identity theft, and identity fraud – risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) invasion of privacy; (iii) breach of the confidentiality of their PII; (iv) deprivation of the value of their PII, for which there is a

well-established national and international market; and/or (v) the financial and temporal cost of monitoring their credit, monitoring their financial accounts, and mitigating their damages.

52. Plaintiff and members of the Classes are entitled to damages in an amount to be proven at trial, and to equitable relief, including injunctive relief.

**COUNT II**
**Breach of Implied Contract**

53. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

54. Plaintiff brings this claim individually and on behalf of the Classes against Defendant ACSC.

55. Plaintiff and members of the Class were required to provide Defendant ACSC their PII in order to receive services.

56. In doing so, Plaintiff and members of the Class entered into an implied contract with Defendant ACSC, whereby Defendant ACSC agreed to safeguard and protect the PII of Plaintiff and members of the Classes and to only use such information to render services to them.

57. When entering into this implied contract, Plaintiff and members of the Classes reasonably believed that Defendant ACSC would safeguard and protect their PII and only use such information to render services to them.

58. Plaintiff and members of the Classes would not have provided such highly sensitive information in the absence of Defendant ACSC's implied promise to safeguard and protect their PII.

59. Plaintiff and members of the Classes fully performed their obligations to Defendant ACSC by providing their PII and fully paying for the services they received.

60. Defendant ACSC breached its implied contract with Plaintiff and members of the

Classes by failing to safeguard and protect their PII from unauthorized third parties.

61. As a direct and proximate result of Defendant ACSC's breach, Plaintiff and members of the Classes have suffered damages, including but not limited to: (i) an imminent, immediate and continuing increased risk of identity theft, and identity fraud – risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) invasion of privacy; (iii) breach of the confidentiality of their PII; (iv) deprivation of the value of their PII, for which there is a well-established national and international market; and/or (v) the financial and temporal cost of monitoring their credit, monitoring their financial accounts, and mitigating their damages.

62. Plaintiff and members of the Classes are entitled to damages in an amount to be proven at trial, and to equitable relief, including injunctive relief.

## COUNT III
**Unjust Enrichment**

63. Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

64. Plaintiff brings this claim individually and on behalf of the Classes against Defendants.

65. Plaintiff and the Class members conferred benefits on Defendants by providing Defendants with their PII and paying Defendants for their services.

66. Defendants received and retained the information and money belonging to Plaintiff and the Classes when Plaintiff and the Classes used their services.

67. Defendants appreciated or had knowledge of such benefits.

68. Defendants knew that Plaintiff and Class members conferred a benefit upon them and both have accepted and retained that benefit by accepting and retaining the PII entrusted to

them. Defendants profited from Plaintiff's and Class members' PII and used Plaintiff's and Class members' PII for their business purposes.

69. Defendants failed to secure Plaintiff's and Class members' PII and therefore did not fully compensate Plaintiff and Class members for the value that their PII provided.

70. If Plaintiff and Class members had known that Defendants would not maintain adequate data security practices to sufficiently protect their PII, they would not have entrusted their PII to Defendants.

71. Plaintiff and Class members have no adequate remedy at law.

72. Defendants enriched themselves by saving the costs they reasonably should have spent on adequate security measures to properly safeguard Plaintiff's and Class members' PII. Instead, Defendants chose to increase their own profits at the expense of Plaintiff and Class members by utilizing cheaper and less effective security measures.

73. Plaintiff and Class members suffered as a direct and proximate result of Defendants' cost cutting measures.

74. Under the circumstances, it would be unjust for Defendants to retain any of the benefits that Plaintiff and Class members conferred upon them.

75. Plaintiff and Class members are entitled to full refunds, restitution, and/or damages from Defendants and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendants related to their wrongful conduct.

## COUNT IV
**Violation of the California Customer Privacy Act (CCPA)**
**Cal. Civ. Code §§ 1798.150, *et seq.***

76. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

77. Plaintiff brings this claim individually and on behalf of the California Subclass against Defendant DSS.

78. The CCPA creates a private cause of action for violations of the CCPA. Cal. Civ. Code § 1798.150(a).

79. Defendant DSS is a "business" under § 1798.140(b).

80. Plaintiff and California Subclass members are "consumers" under § 1798.140(g).

81. The PII of Plaintiff and California Subclass members is "personal information" under § 1798.150(a) and § 1798.81.5.

82. Defendant DSS had a duty to implement and maintain reasonable data security measures to safeguard Plaintiff's and California Subclass members' PII.

83. Plaintiff's and California Subclass members' PII was subject to unauthorized access and disclosure.

84. The Data Breach occurred due to Defendant DSS' failure to implement and maintain reasonable security measures.

85. Plaintiff provided written notice to Defendant DSS consistent with Civil Code 1798.150(b)(1) prior to the filing of this lawsuit. If Defendant fails to act or otherwise cure the CCPA violations described herein within 30 days, Plaintiff reserves her right to amend this Complaint to seek statutory damages and any other relief this Court deems proper.

## PRAYER FOR RELIEF

86. WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks a judgment against Defendant as follows:

A. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Classes and Plaintiff's attorneys as Class Counsel to represent the Classes.

B. For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

C. For prejudgment interest on all amounts awarded;

D. For an order of restitution and all other forms of equitable monetary relief;

E. For injunctive relief as pleaded or as the Court may deem proper; and;

F. For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

**JURY DEMAND**

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated: April 8, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: *<u>/s/ Philip L. Fraietta</u>*
Philip L. Fraietta

Philip L. Fraietta
50 Main Street, Suite 475
White Plains, NY 10606
Telephone (914) 874-0710
Facsimile: (914) 206-3656
Email: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Stephen A. Beck *(pro hac vice forthcoming)*
701 Brickell Ave., Suite 2100
Miami, FL 33131
Tel: (305) 330-5512
Fax: (305) 676-9006
E-Mail: sbeck@bursor.com

*Counsel for Plaintiff*